## PURKEY v. HARDING et al.

Defendant's letters constituting one his agent to find a purchaser for his land, and merely giving him the ordinary authority of a broker, do not authorize him to make a contract for sale thereof, within Civ. Code, § 1238, subd. 5, providing that an agreement for sale of real estate, if made by an agent, is invalid, unless the agent's authority be in writing.

A plaintiff relying for his cause of action on a ratification of an unauthorized contract by an agent must plead and set out in his complaint the facts necessary to constitute such ratification.

(Opinion filed, October 6, 1909.)

Appeal from Circuit Court, Beadle County. Hon. CHAS. S. WHITING, Judge.

Action by J. G. Purkey against T. A. Harding and others. Judgment for defendants. Plaintiff appeals. Affirmed.

*C. A. Kelley* and *James Byrnes,* for appellant. *A. C. Biernatzki,* for respondents.

McCOY, J. This is an action brought by plaintiff, who is appellant, against T. A. Harding et al., defendants, for specific performance of a certain written contract alleged in the complaint to have been executed by Kelley's Land Agency, as the duly authorized agent for T. A. Harding, party of the first part, and J. G. Purkey, party of the second part, whereby the defendant Harding purported to sell to plaintiff certain therein prescribed real estate situated in Beadle county on certain therein specified terms and conditions. The defendant Harding answered, denying that he had ever authorized the said Kelley's Land Agency to execute the said contract on his behalf. On the trial the plaintiff offered in evidence the original of said contract, which was objected to by defendant Harding on the ground the same was incompetent and not binding on defendant; it not being shown that the Kelley's Land Agency was authorized in writing to make said contract, and it not being shown that defendant Harding ever agreed to the terms or conditions of said contract. The court sustained the objection, and to which ruling the plaintiff duly excepted. At the conclusion of plaintiff's evidence, the court on motion made findings in favor of defendants that the said Kelley's Land Agency was not authorized in writing to execute the said contract for and on behalf of defendant Harding, and rendered judgment dismissing plaintiff's complaint on the merits, and to which findings and judgment the plaintiff duly excepted. Plaintiff brings this appeal, alleging a number of errors, but under the view we take of the case it will not be necessary to discuss other than as hereafter appears.

The plaintiff contends that the trial court erred in sustaining defendants' objection to the introduction in evidence of the contract in question. The whole gist of this action turns upon the in-

·troduction in evidence of this contract, as the foundation for the relief, and the specific performance demanded is based entirely upon this contract. We are of the opinion that the ruling of the trial court was correct. It is provided by the statute of this state that contracts for the sale of real estate must be in writing, and that, if such contract or agreement be made by an agent of the party sought to be charged, the contract is invalid unless the authority of the agent be in writing subscribed by the party sought to be charged. Civ. Code, § 1238, subd. 5. The only evidence produced bearing on the authority of the Kelley's Land Agency to execute this contract is contained in certain ·telegrams and letters introduced in evidence. The first telegram from Harding ·to Kelley's Land Agency, dated June 20, 1905, is as follows: "Cannot you sell the W ½ 21-111-62 right away?" On June 24th Harding wrote Kelley's Land Agency: "Replying to yours of the 23rd, will say that I believe that half section is worth $6400.00. I am anxious to ·sell so will consider a fair offer and will reply promptly either accepting or declining the offer. Trusting to get a good offer from you quickly. Yours truly." On June 28th Harding again wrote Kelley's Land Agency as follows: "Thanks for your letter of the 26th inst. I have been offered $15.00 an acre net more than once, and am now asked for an option at $5000.00 net. I will grant no option but will sell for $5000.00 net to the first that takes the land. If you can handle it at $5000.00 net wire me." On September 27th Kelley's Land Agency wired Harding: "Sold west half of 21-111-62, as per your letter of June 28th. On receipt of this telegram and a letter from Kelley's Land Agency stating that Kelley's Land Agency had sold the land in question to J. G. Purkey, the defendant Harding then sent a deed with the name of the grantee blank and an abstract of title to a bank in Huron to be delivered to the Kelley Land Agency upon the payment of the purchase price. In the meantime a suit was commenced against the defendant Harding affecting the title to this land by third parties and a notice of lis pendens filed, and Kelley's Land Agency would not accept the deed or pay the consideration until the notice of lis pendens had been discharged. A voluminous correspondence was then carried on between Kelley's Land Agency and this defendant, Harding. in relation to the discharge of the lis pendens. The lis pendens was discharged December 1, 1905. It appears that in November, 1905, prior to the discharge of the lis

pendens, Harding transferred the land in question by deed to defendant Sibley, but without consideration. There is nothing in any of this correspondence that would authorize Kelley's Land Agency to sign a contract for the sale of the land in question, or that would be in any way binding on defendant Harding. The strongest possible effect that could be given to the telegram and letters of Harding was to constitute Kelley's Land Agency his agent to find a purchaser able, ready, and willing to enter into a contract with the defendant Harding to purchase the land on the prescribed terms. It was the ordinary authority of a real estate broker with whom land is listed for sale that was conferred by this correspondence, and nothing more. The ordinary authority of a real estate broker with whom land is listed for sale does not extend to or does not confer any authority upon the agent to sign a contract for or in the name of the land owner. The giving of an agent authority to sell does not by force of the terms used, or by their general acceptation confer authority to sign the vendor's name to a contract of sale. The case of Brandrup v. Britten, 11 N. D. 376, 92 N. W. 453, is a well-considered case directly in point. . The principal is not liable on the contract of his agent, executed in the name of the principal, where the agent was not authorized by the principal to enter into the contract. Quale v. Hazel, 19 S. D. 483, 104 N. W. 215.

The plaintiff contends that defendant Harding by sending his deed and the abstract of title to the bank at Huron to be delivered to the Kelley Land Agency upon the payment of the purchase price constituted a ratification of the contract in question, but as we view the pleadings in this case, the question of the ratification of this contract is not in issue. Where a plaintiff would rely for his cause of action upon the ratification of an unauthorized contract it would be necessary for such plaintiff to fully plead and set out in his complaint all the facts necessary to constitute such ratification in order that defendant might properly answer thereto. In our opinion neither the complaint nor the evidence is sufficient to show anything that would constitute a ratification of an unauthorized contract for the sale of real estate.

Finding no error in the record, the judgment of the lower court is affirmed.

WHITING, J., took no part in this decision.