SORUM, et al., Respondents, v. SORENSON, Appellant.

(187 N. W. 423.)

(File No. 5033. Opinion filed March 31, 1922.)

1. Specific Performance—Land Sale to Farmer, Subsequent Reduction of Farm Product Prices as Defense—Rule Stated.

Appellant, vendee under a land sale contract, and defending in a suit to enforce vendor's lien, on theory of a suit for specific

performance, invokes an untenable proposition in seeking to
.defend on ground that, because of a large reduction in prices of
farm products after the sale contract was made, thus rendering
him unable to meet payments under the contract, it would be
inequitable and unconscionable to require such payments to be
made; the established rule being that, while a court will not
enforce specific performance where ' great hardship would result
to either party, yet, the question of hardship is to be judged
lof at time the contract is entered into, and if then fair and
just, it is immaterial that subsequent circumstances or change
of events have become less beneficial to one party, except where
the subsequent events are due to party seeking performance of
the contract; since all contingencies attaching to or involved in
the performance of a contract, are taken upon themselves by
the parties; and the reasonableness of a contract is to be judged
of at time of its making. Nor is it a case of hardship that the
ultimate object in view in entering into a contract has become
impossible.

2. Lien—Vendor's Lien on Land, Statutory Right to Enforce—Strict
    Foreclosure As Cumulative Remedy—Complaint Re Lien.

    A complaint alleging a written contract for land sale and
    failure of vendee to make subsequent payments, under which
    failure the whole debt became due, and praying establishment
    and foreclosure of a vendor's lien and sale of the land, etc.,
    states a cause of action for enforcement of such lien, and not
    one for specific performance; and under Sec. 1689, Code 1919,
    giving a special or vendor's lien on realty to one selling it, in-
    dependent of possession, for unpaid purchase price, etc., and
    Sec. 1543, providing that sale of property on which a lien exists,
    in satisfaction of the claim secured thereby extinguishes the
    lien, such right is given and enforceable; while under Secs.
    2914, 2915, conferring the remedy of strict foreclosure, a cumu-
    lative remedy is given, empowering court to equitably adjust
    all parties' rights.

3. Vendor's Lien—Statutory Right As Absolute, In Absence of
    Fraud—Vendee Farmer's Defense of Slump in Farm Prices
    Unavailing.

    Secs. 1689, 1543, creating vendor's lien on realty sold and
    for extinguishment of such lien by sale, create a remedial right
    under a sale contract, as absolute as those pertaining to other
    contracts, and which a court at law or in equity is at liberty to
    deny, save where fraud exists; and while a contract so unjust
    and inequitable as to create a clear inference of fraud, legal or
    actual, in its inception, may be denied performance; yet an
    answer to a complaint for enforcement of vendor's lien, alleg-
    ing that the sale was understood by both parties as made to a
    farmer who must rely for ability to make purchase money pay-

ments thereunder, on sale of grain and livestock, and that subsequently to date of contract prices of said products fell until they were approximately one-fourth of what they were at date of contract, which fall of prices was not contemplated by the parties, that great hardship to vendee and his family, through financial ruin, would result if required to make such payments, and that prices would not within his lifetime increase so as to enable him to pay even the interest upon the debt,—raises no issue of fraud or inequity in inception of the contract; and mere lack of foresight as to trend of economic affairs affords no ground on which either a court of law or of equity can relieve a party from a legal contract obligation, even though its enforcement may result in bankruptcy or financial distress.

4.   **Vendor's Lien—Foreclosure of—Whether Remedy at Law For Breach of Contract, Is Sole Remedy—Code Remedy For Damages Or Specific Performance.**

Vendee's contention as defense in a suit to enforce vendor's lien under realty sale contract, that vendors should be remitted to their remedy at law for breach of contract, is untenable; since while in states having separate law and equity courts, refusal to enforce specific performance was usually by way of compelling parties to accept legal damages for breach of contract in lieu of specific performance, yet in this jurisdiction having but one court with both law and equity jurisdiction, and one form of action for enforcement of either legal or equitable rights, a complaint as in instant case entitles plaintiff either to such damages or to specific performance.

Appeal from Circuit Court, Lincoln County. Hon. JOHN T. MEDIN, Judge.

Action by Minor J. Sorum, Haran J. Sorum and others, against Einer Sorenson, to establish and enforce a vendor's lien upon realty sold by plaintiffs to defendant. From an order sustaining a demurrer to the answer, defendant appeals. Affirmed.

*Carlson & Smith,* for Appellant.

*Kirby, Kirby & Kirby,* for Respondents.

(1)   To point one of the opinion, Appellant cited: City of Lead v. Western Gas & Fuel Co., (S. D.) 184 N. W. 244; City of Scranton v. Public Service Commission, 268 Pa. 192; Willard v. Taylor, 19 Law Ed. 501; Pomeroy Eq. Jur., Vol. 4, par. 1405, Vol. 5, par. 2207; 36 Cyc. 617; Watters v. Ryan, 141 N. W. 359.

SMITH, J.   This is an appeal from an order sustaining a demurrer to a defense alleged in the answer.

The complaint alleges that on the 14th of September, 1920, plaintiffs entered into a written contract with defendant whereby

plaintiffs agreed to sell and convey and defendant agreed to purchase 198.72 acres of land in Lincoln county, for which the defendant agreed to pay plaintiffs the sum of $64,584, $2,500 cash, and $13,084 to be paid on March 1, 1921, to assume a mortgage of $15,000 on the land, and, upon payment of the installment due on March 1, 1921, plaintiffs should deliver possession of the premises to defendant, a final payment of $34,000 to be made on March 1, 1941, which contract provided that, in case of failure of the defendant to make each of the payments or perform any of the covenants therein contained, the whole of said payments and interest should become immediately due and payable; that defendant has failed to perform his part of said contract, in that he failed to pay the sum of $13,084 on the 1st of March, 1921, and has failed in all other respects to do any of the things required to be done under said contract, and has notified plaintiffs that he will not perform any of the further requirements of said contract. Plaintiff demands establishment and foreclosure of a vendor's lien and sale of the land, etc.

The defense demurred to alleges that, at the time said contract was entered into, defendant was a farmer engaged in raising grain and live stock which was his only source of income; that the payments to be made under said contract could be made only from such sources, and his ability to perform the conditions of said contract depended wholly upon his income from such sources, and upon the prices which he would receive for such commodities; that when the contract was entered into prices of such commodities were such that each party was justified in believing, and did believe, that defendant would be able to pay for said land in accordance with the terms of the contract, and that none of the parties believed, or had any reason to believe, that prices of such commodities would suddenly, and within a short time, materially and drastically drop; and that each of said parties knew that, in case prices did materially and drastically fall, the defendant would be utterly unable to make the payments provided in said contract; that shortly after the execution of said contract the prices of such commodities fell until they were approximately one-fourth of what they were at the time of the execution of said contract; that such fall of prices was not within the contemplation of the parties at the time of the execution of said contract; that de-

fendant is head of a family, dependent upon his labor for the support of himself and family, and has only a limited amount of property, and, if a judgment should be entered in said action requiring him to perform such contract, he could not comply with such order, and in such case would be utterly ruined financially, and such judgment would work a tremendous and gross hardship upon himself and family, and would take from him the means of supporting himself and his family, and generally would work a great injustice and hardship upon him, and would be oppressive, ruinous, and inequitable as to him and his said family; and that the price of commodities will not, within his lifetime, increase to such an extent that it will ever be possible for him to pay even the interest upon his indebtedness, and that he will never be able to pay any part of the principal provided for in said contract. Wherefore defendant asks that the complaint be dismissed, and plaintiffs be remitted to their relief at law. Demurrer on the ground that the facts stated did not constitute any defense to the complaint. From an order sustaining such demurrer, defendant appeals. Under these admitted facts appellant asks whether a court of equity will aid respondents in financially ruining him. Appellant's counsel say:

"We are not attacking the validity of this contract, nor questioning the right of respondents to proceed at law for damages for its breach."

They concede that such contracts may be enforced even though hardship might result, provided the consequences are not ruinous to the vendee. Appellants' contention is summed up in the statement that:

"The contract is confiscatory, harsh and ruinous as to appellant on account of the changed economic conditions."

[1] Appellant in his main brief discusses the case upon the assumption that the action is one for specific performance, and cites the well-established rule that, where the enforcement of such a contract would be unconscionable or inequitable, performance will not be decreed, citing many authorities. But this rule has well-defined limitations, even when invoked in suits for specific performance of contracts.

In Fry's Work on Specific Performance (5th Ed.) 209, the rule of equity relied upon by appellant, and its limitations, are thus stated:

"It is a well-established doctrine that the court will not enforce the specific performance of a contract, the result of which would be to impose great hardship on either of the parties to it; and this although the party seeking specific performance may be free from the least impropriety of conduct. The question of hardship of a contract is generally to be judged of at the time at which it is entered into; if it be then fair and just, and not productive of hardship, it will be immaterial that it may, by the force of subsequent circumstances or change of events have become less beneficial to one party, except where these subsequent events have been in some way due to the party who seeks the performance of the contract. For, whatever contingencies may attach to a contract, or be involved in the performance of either part, have been taken upon themselves by the parties to it. It has been determined that the reasonableness of a contract is to be judged of at the time it was entered into, and not by the light of subsequent events. * * *"

Id.214:

"It will not constitute a case of hardship that the ultimate object which a party had in view of entering into a contract may have become impossible. The mere failure of the purchaser's speculation will not discharge him from his obligations to the vendor."

[2] Appellant, however, is in error in assuming that the action is one for specific performance. It is clearly one for the enforcement of a vendor's lien. Such a lien and the right to its enforcement are statutory in this jurisdiction. Section 1689, Code 1919, declares that:

"One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid, and unsecured otherwise than by the personal obligation of the buyer."

Section 1543, Id.:

"The sale of any property on which there is a lien, in satisfaction of the claim secured thereby *  * extinguishes the lien thereof."

The Code (sections 2914, 2915, Code 1919) also provides a cumulative remedy in such cases and empowers the court to equitably adjust the rights of all the parties thereto.

[3] Appellant's position and argument demand a complete release at the hands of the court of any remedy upon legal obligations arising from a contract, under the statute which creates the vendor's lien. This statute creates a remedial right under such contracts as absolute as those which pertain to other contracts, and which no court, either in chancery or at law, in the absence of fraud, is at liberty to deny. Any contract which is so unjust and inequitable in its terms or conditions as to create a clear and unmistakable inference of fraud, legal or actual, in its inception, may be denied performance by any court. The answer in this case raises no issue of fraud or inequity in the inception of the contract. On the contrary, its fairness and reasonableness, and the possibility of its full performance by appellant under then existing economic conditions, stand conceded in both the answer and the argument of counsel. Mere lack of foresight as to the trend of economic affairs, for which neither party is responsible, affords no grounds upon which a court of equity, any more than a court of law, can relieve a party from the legal obligations of a contract, even though its enforcement may result in bankruptcy or financial distress to one of the parties thereto. As much as we may regret the lack of judgment which may have induced a party to enter into a contract which may result in financial distress to him and his family, this court is without power to release him from obligations fair and reasonable at the time they were entered into. Both parties had equal opportunity of exercising judgment and foresight as to possible or probable changes in prices of agricultural products, and lack of judgment in such matters is no ground for releasing either party from contract obligations. As well might a court of equity refuse foreclosure of a mortgage, fair and just when entered into, because of changes in economic conditions which might make it impossible for a mortgagor to pay his indebtedness.

Appellant's main contention is that respondent should be remitted to their remedy at law for breach of contract.

In those states having separate law and equity courts, or courts in which legal and equitable remedies are separately

administered, the refusal to enforce specific performance was in most cases by way of compelling parties to accept legal damages for breach of contract in lieu of specific performance. But it must be borne in mind that in this jurisdiction we have but one court, with both law and equity jurisdiction, and one form of action for the enforcement of rights, either legal or equitable. Certainly the complaint in this case states facts which would entitle respondents either to damages for breach of contract or to equitable relief by specific performance, and appellant, in effect, is asking this court to deny respondents any relief whatever, merely because both parties to the contract failed to realize the possibility of then future economic changes, and in business conditions, which have since resulted in drastic and unexpected fall of prices of agricultural products. The principle for which appellant contends logically applied, would release every speculator in farm and agricultural products from his obligations and liabilities upon speculative contracts, provided it be made to appear that the enforcement of such contracts would result in bankruptcy to him and great distress and suffering to his family. We cannot so hold.

The order of the trial court is affirmed.