STAAB, Respondent v. SKOGLUND et ux, Appellants

(234 N.W.2nd 45)

(File No. 11340. Opinion filed October 17, 1975)

Wally Eklund, Gregory, William J. Srstka, Jr., Pierre, for plaintiff and respondent.

E. Steeves Smith, Tinan, Carlson, Padrnos & Smith, Mitchell, for defendants and appellants.

WOLLMAN, Justice.

This is an action brought to cancel a warranty deed to certain property in Miner County, South Dakota. The trial court entered judgment setting aside the deed and perfecting title to the property in the plaintiff. Defendant grantees have appealed. We affirm in part, reverse in part and remand the case to the circuit court with directions.

In the year 1959, plaintiff Vernnena Staab (plaintiff) acquired ownership of the NW ¼ of Section 34, Township 105 North, Range 55 West of the Fifth P.M. in Miner County, South

Dakota (the land). Plaintiff lived on the land until 1965 or 1966, when she moved to Seattle, Washington. Defendant Alden Skoglund (defendant)[1] rented the land from plaintiff on a cash rent basis from and after 1960 until 1967.[2] Following some preliminary negotiations in 1967, plaintiff called defendant on the telephone on October 24, 1967, and reached a verbal agreement with him whereby she agreed to sell him the land for $17,500, defendant to make a down payment of $500 and to pay the balance of $17,000 within thirty days. On November 3, 1967, plaintiff called attorney Milton Cameron in Sisseton, South Dakota, and advised him that she had agreed to sell the land to defendant. She related to Mr. Cameron the terms of the sale and asked him to handle all of the details of the transaction for her. Mr. Cameron agreed to represent her in the transaction and asked her to write him a letter stating exactly what she had told him on the telephone.

On that same day, November 3, 1967, Mr. Cameron wrote a letter to plaintiff in which he stated in part that:

> "* * * I am writing Mr. Skoglund today and advising him that you desire an immediate down payment of $500.00. The balance of $17,000.00 to be paid on or before the 28th of this month.

> "As soon as I have received the Abstract from you I will forward it to the Abstracter for continuation, and in the mean time I will have heard from Mr. Skoglund as to whom he would like it delivered to for examination and opinion. * * *"

---

1. Defendant's wife, Delores Skoglund, named as a joint tenant grantee in the deed, was added as a party defendant in the instant case after the evidence had been presented to the trial court. Because she was not a party to any of the communications described in the opinion, we will for the most part refer solely to Alden Skoglund as defendant.

2. Defendant was to pay plaintiff $900 cash rent for the land for the year 1967, $450 of which was due September 1, 1967, and the balance of $450 due on January 1, 1968. On September 22, 1967, defendant sent plaintiff a check for $400 for the first half of the 1967 rent, it being agreed that he was to have a $50 offset for some fencing material that he had furnished; on January 10, 1968, defendant sent plaintiff a check for the $450 balance of the 1967 cash rent, plaintiff cashed this check on January 31, 1968.

Also on November 3, 1967, Mr. Cameron wrote a letter to defendant, which stated in part that:

"I received a telephone call from Mrs. Staab this morning asking me to handle the sale of her farm in Miner County. She advised me that the agreed price was $17,500.00 and $500.00 was to be paid down. She is forwarding me the Abstract of Title to be continued and delivered to the Lawyer of your choice for examination. In addition to the $500.00 down payment she further advised me that there is a balance due her for rental of $500.00, which sum she would also expect to be paid on or prior to the completion of the transaction. The balance of $17,000.00 of the purchase price is expected to be paid by the 28th of this month. * * *

"As soon as you receive this letter I wish that you would forward to me the $500.00 payment noting on the check that it is the down payment on the NW ¼ of Section 34, Twp. 105, N. Range 55, W of the 5th P.M., Miner County, S.D., as well as the name of the Lawyer to whom you wish the Abstract delivered for examination. Also mark the other $500.00 check the payment of the balance of the 1967 rental. * * *"

Also on November 3, 1967, plaintiff wrote a letter to Mr. Cameron, which stated in part:

"I am sending you the abstract. You should get the $500.00 earnest money. I want it closed as soon as possible. He has had plenty of time on this. Be sure and set a dead line. He will try not borrowing money as long as possible.

"Be sure and remind him the *balance* of his rent will be due Jan 1, 1968—$450.00 cash. * * * P.S. As I look at the calendar I see Nov 24 look (sic) like a good closing date I know he is going to try and drag this out. He has already had 2 weeks to line up the money on *this* deal. * * *" (emphasis in original)

On November 4, 1967, defendant sent to Mr. Cameron a check in the amount of $500 payable to plaintiff marked "down payment on NW ¼ of Sec. 34." On November 7, 1967, Mr. Cameron wrote to defendant acknowledging receipt of the $500 check and advising defendant that he had sent the abstract on the land to the abstract company for continuation.

On November 8, 1967, plaintiff wrote Mr. Cameron a letter in which she stated in part that:

"I rec'd your letter and everything is just fine. Hope I have not confused you. The 28th is just fine.

I am sure Mr. Skoglund is going to want more time. I told him on the phone 30 days and that was the 24th of Oct we talked. So he mentioned this loan. I never said anything because I have *no intentions* of giving him any more time." (emphasis in original)

On November 7, 1967, plaintiff duly executed the warranty deed which had been sent to her by Mr. Cameron, conveying the land to defendant and his wife, and later mailed it back to Mr. Cameron.

On November 17, 1967, Mr. Cameron wrote to plaintiff acknowledging receipt of the warranty deed and enclosing the $500 down payment check received from defendant. He informed plaintiff that he had heard nothing from either defendant or the abstractor. He enclosed copies of the letters he had written to defendant and to the abstractor. On that same day, however, Mr. Cameron executed a 60 day purchase option as attorney for plaintiff in favor of defendant, apparently to satisfy the requirements of the Farmers Home Administration, from whom defendant had apparently been trying to secure a loan. This option was executed without any authority from plaintiff.

Apparently defendant was unable to raise the balance of the purchase price by November 28, 1967, for that date came and went without payment to plaintiff.

On December 13, 1967, plaintiff cashed defendant's $500 down payment check of November 4, 1967. Apparently nothing

further occurred until December 27, 1967, when Mr. Cameron wrote to the abstract company in Howard, South Dakota, inquiring about the bill for the continuation of the abstract. In reply, the abstractor stated that because of an overload of work the abstract to the land had not yet been continued. The abstract was finally continued and delivered to defendant on June 17, 1968.

As has already been noted, plaintiff cashed defendant's $450 check for the balance of the 1967 rent on January 31, 1968. Prior to their October 24, 1967, agreement for sale and purchase, plaintiff had rented the land to defendant for the 1968 crop year and had agreed with defendant that the $900 rental for 1968 would be payable in two installments of $450 each, the first due on September 1, 1968, and the second due on January 1, 1969. Thus the $450 check sent by defendant to plaintiff on January 10, 1968, was clearly referable to the balance due on the 1967 rent and not, as sometimes intimated by plaintiff, to the 1968 rent.

The next activity in connection with the land purchase occurred on June 19, 1968, when Mr. Cameron wrote to defendant, stating in part that:

"The last correspondence I had with you in connection with the farm that you were planning to buy from Vernnena L. Staab was on November 17, 1967, at which time I sent you an Option on the land.   *   *   *

"The real reason for this letter is that this office received a telephone call yesterday in connection with the land and whether or not you were still planning on buying it.   *   *   *

"Your early response would be appreciated in order that I may advise both the interested party and Mrs. Staab."

Thereafter, defendant obtained a loan from the Federal Land Bank Association at Madison, South Dakota. On August 8, 1968, Mr. Cameron wrote a letter to the manager of the Federal Land Bank at Madison, enclosing the warranty deed that had been signed by plaintiff on November 7, 1967, and informing the manager about the balance due on the purchase price and

authorizing him to deliver the deed to defendant after drawing a check payable to plaintiff for the amount of the balance of the purchase price.

Apparently coincidentally, plaintiff wrote a letter to defendant on August 8, 1968, stating:

"Just a note. Please send me the balance 400—on the rent. *If* you send this *right away* we will count the 500.00 as rent." (emphasis in original)

On August 12, 1968, the manager of the Federal Land Bank Association sent Mr. Cameron a check in the amount of $17,032.53 payable to plaintiff. On August 13, 1968, Mr. Cameron wrote to plaintiff advising her that at long last the land sale had been completed and enclosing the check for $17,032.53.

By letter dated August 19, 1968, plaintiff returned the $17,032.53 check to the Federal Land Bank Association at Madison, stating that "I have no intention of selling at this price now.  *  *  *" Also on August 19, 1968, plaintiff informed Mr. Cameron by letter that "*  *  *  I'm not going to fool around any more. I sent the check back to the loan company."

Following extensive correspondence between herself and the Federal Land Bank Association, plaintiff on July 29, 1970, authorized the Federal Land Bank Association to deposit the $17,032.53 check in an interest bearing account pending the outcome of the dispute between plaintiff and defendant.

Plaintiff filed a complaint against Mr. Cameron and defendant alleging that Mr. Cameron had delivered the warranty deed in question on August 8, 1968, contrary to plaintiff's specific instructions. The prayer for relief asked that the deed be set aside, that plaintiff be given immediate possession of the land, that title to the land be perfected in plaintiff, and that defendant be required to satisfy all liens against the land. [3]

---

3. Defendant Cameron's motion to dismiss this action against him was granted by the circuit court. A separate action brought by plaintiff against him for money damages is pending in circuit court in Roberts County, South Dakota.

Defendant's amended answer alleged that plaintiff through her agent Cameron had agreed to sell the land to defendant for $17,500, with a down payment of $500, which was duly delivered to and received by Cameron; that the balance of the purchase price was "expected to be paid by the 28th of this month" (referring to Mr. Cameron's letter of November 3, 1967); that the time of payment was never expressly declared to be the essence of the contract and at the time of payment of the balance of the purchase price was from time to time extended by plaintiff; that the abstract of title was not delivered for examination purposes until July of 1968; and that defendant had tendered and continued to tender the balance of the purchase price for the land. In a word, defendant alleged fulfillment of the contract terms on his part as a defense to plaintiff's action to set aside the warranty deed.

The trial court entered findings of fact generally incorporating the factual statements set forth above. The trial court specifically found that the delivery by Mr. Cameron of the warranty deed to defendants was contrary to plaintiff's specific instructions and without any authority from plaintiff. From these findings the court concluded that title to the land was being wrongfully held by defendants; that the warranty deed operated to pass no title to the defendants and was void because there had been no effective delivery by plaintiff to defendants; that the deed should be set aside as void; and that title to the land should be perfected in plaintiff's name. Based upon these findings and conclusions, the trial court entered judgment to the effect that "title to the property described above is perfected in the plaintiff and said deed is hereby declared void, set aside, and passes no title." The trial court refused to grant plaintiff's prayer that she have possession of the land.[4]

Although the issue of Mr. Cameron's authority to deliver the warranty deed was contested during the trial, on appeal defendants concede that the trial court's finding that Mr. Cameron had no authority to deliver the warranty deed in August of 1968 is probably not clearly erroneous and therefore

_____

4. We were informed at oral argument that plaintiff had started a forcible entry and detainer action to recover possession of the land.

not subject to reversal. Rather, defendants contend that notwithstanding Mr. Cameron's lack of authority to deliver the warranty deed after November 28, 1967, an executory contract for the sale of the land still exists notwithstanding the cancellation of the deed, and that defendants are possessed of contract rights that were not effectively terminated by the judgment setting aside the deed. To this contention plaintiff replies that defendants did not raise the issue of an executory contract in the trial court and thus are precluded from doing so for the first time on appeal, and that if defendants desired to bring an action in the way of specific enforcement they were required to do so under the provisions of the compulsory counterclaim statute, SDCL 15-6-13(a), and having failed to do so they are now precluded from raising the issue.

■■■ With respect to the matter of the compulsory counterclaim, this court has adopted the logical relation test as the standard to determine whether a counterclaim is compulsory or permissive. *Olawsky v. Clausen,* 87 S.D. 578, 212 N.W.2d 653. In the sense of the word that there is a logical relation between defendants' claim that an executory contract exists for the sale of the land that could be enforced against plaintiff and plaintiff's action to set aside the warranty deed, it might be said that a claim for specific performance might be considered as being in the nature of a compulsory counterclaim. However, one of the four explicit exceptions within SDCL 15-6-13(a) to the general rule that a counterclaim is compulsory if it arises out of the same transaction as the opposing party's claim is that a party need not assert a counterclaim that has not matured at the time he serves his pleading. Wright & Miller, Federal Practice & Procedure: Civil § 1411. By framing her action in the nature of a claim to set aside the warranty deed, plaintiff necessarily alleged the terms of the contract between herself and defendant and the terms of the agency within which she had delivered the deed to Mr. Cameron. She made no claim that the contract was invalid or that it be foreclosed. Indeed, it is understandable why plaintiff should have desired not to bring an action for strict foreclosure of the contract under the provisions of SDCL 21-50 in view of the absolute statutory rights given to a contract vendee under the provisions of SDCL 21-50-3, and given this court's liberal interpretation of a contract vendee's rights. See, e. g., *Ford v.*

*Hofer,* 79 S.D. 257, 111 N.W.2d 214; see generally Clark and Richards, "Installment Land Contracts in South Dakota—Part II," 7 S.D.Law Rev. 44 (1962). Even if plaintiff had elected to bring an action for strict foreclosure under the provisions of SDCL 21-50, it is doubtful whether defendants would have had to counterclaim for specific performance inasmuch as under the provisions of SDCL 21-50-3 the court would have had to give defendants at least ten days within which to comply with the terms of the contract. If plaintiff's additional prayer for relief that title be perfected in her be considered an action for strict foreclosure of the contract, then it would seem that defendants as contract vendees are entitled to the statutory rights conferred by SDCL 21-50-3. However one looks at the procedural aspects of this case as framed by plaintiff's complaint, one must conclude that the relief prayed for by plaintiff either did not state a claim which gave rise to a mature claim for specific performance on the part of defendants that would have to be asserted as a compulsory counterclaim, or else it stated a claim for strict foreclosure of the contract under the provisions of SDCL 21-50 to which defendants would not have to assert a counterclaim for specific performance inasmuch as they in their amended answer asserted their willingness that the balance of the purchase price be paid to plaintiff forthwith.

In holding that defendants' contention that an executory contract exists between the parties is not barred by virtue of SDCL 15-6-13(a), we do not in any way mean to recede from our holding in *Olawsky v. Clausen,* supra, wherein we stated that the purpose of the compulsory counterclaim statute is to reduce the volume of litigation and promote the just, speedy, and inexpensive determination of controversies by barring relitigation of the same set of facts. Our decision in the instant case will no doubt result in a subsequent lawsuit on the executory contract. This, however, is a matter over which we have no control in view of the manner in which the parties elected to frame the issues. Plaintiff should not be heard to complain inasmuch as she elected, out of very practical legal considerations, no doubt, to seek the relief she did.

With respect to plaintiff's claim that defendants are barred from raising the issue of an executory contract on appeal

because they did not raise it in the trial court, defendants' amended answer alleged a continuous tender of the balance of the purchase price; moreover, in his motion for a directed verdict made at the close of plaintiff's case, counsel for defendants stated that the balance of the purchase price was tendered by defendants after November 28, 1967, and refused by plaintiff on two or three different occasions, "*   *   *   [a]nd under the law of South Dakota the tender having been made and no showing that there was a reason why it could not be accepted, the contract would have been possibly subject to an action for foreclosure, but that was not done.   *   *   *" This motion was renewed on the same grounds at the close of all of the evidence. In addition, defendants' proposed findings of fact and conclusions of law included a proposed finding that on November 3, 1967, Mr. Cameron wrote the above described letter to defendant setting forth the terms of the sale, and a proposed conclusion that this letter constituted an executory contract that remained in full force and effect, and that under the pleadings in the case the trial court was without jurisdiction to adjudicate the rights of the parties under the terms of the contract inasmuch as the remedy for a determination of such rights would have been either an action to foreclose the executory contract or an action for the rescission of the same.

Although not pleaded as specifically as it might have been, we conclude that the issue of the executory contract was raised by defendants' amended answer. Moreover, even if not so raised, when considered in the light of defendants' motion for a directed· verdict and in light of the general tenor of the testimony during the trial, we believe that this issue was tried by the implied consent of the parties. SDCL 15-6-15(b); *Sabbagh v. Prof. & Bus. Men's Life Ins. Co.*, 79 S.D. 615, 116 N.W.2d 513. And certainly, contrary to plaintiff's assertion that the issue was raised for the first time in defendants' brief on appeal, the issue was squarely presented to the trial court in defendants' proposed findings of fact and conclusions of law. [5]

---

5.   The same considerations would apply if we deemed plaintiff's suit to be an action to quiet title pursuant to SDCL 21-41. We note, however, that apparently plaintiff did not intend to proceed under the provisions of that chapter inasmuch as she did not comply with SDCL 21-41-7, and her complaint only marginally meets the requirements of SDCL 21-41-11.

The only remaining issue, then, is whether an enforceable executory contract exists between the parties for the sale of the land. There is no question concerning the terms of the alleged contract. Plaintiff pleaded the terms of the contract in her complaint. She testified at trial that the letter from Mr. Cameron to defendant of November 3, 1967, expressed the terms of the contract that she had entered into with defendant and that had defendant paid the balance of the purchase price on November 28, 1967, she would have conveyed the land to him. Thus we have here a situation where there is no dispute as to the material terms of the alleged contract. Cf. *Skjoldal v. Myren*, 86 S.D. 111, 191 N.W.2d 809; *Habeck v. Sampson*, 88 S.D. 437, 221 N.W.2d 483. The only question is whether the contract meets the requirements of enforceability under the Statute of Frauds.

SDCL 53-8-2 provides:

"The following contracts shall not be enforceable by action unless the same or some memorandum thereof be in writing and subscribed by the party to be charged or his agent, thereunto authorized in writing:   *   *   *

(3) An agreement for the sale of real estate or an interest therein or lease of the same for a period longer than one year, but this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof. *   *   *"

SDCL 59-2-1 provides:

"Any person with capacity to contract may create an agency and confer authority on any other person to do any act which he might do excepting acts to which he is bound to give personal attention."

SDCL 59-2-2 provides:

"The agency and authority described in § 59-2-1 may be created by precedent authorization or subsequent ratification, without consideration being necessary to make same binding upon the principal."

SDCL 59-2-3 provides:

"An oral authorization is sufficient for any purpose, except that an authority to enter into a contract, other than a negotiable instrument, required by law to be in writing can only be given by an instrument in writing."

SDCL 59-2-4 provides:

"Ratification can be made only in the manner that would have been necessary to confer authority originally, *   *   *".

In the case of *Dal v. Fischer,* 20 S.D. 426, 107 N.W. 534, this court held that where the landowner herself had not signed an instrument in writing authorizing an agent to enter into a contract for the sale of her land and had not signed any writing ratifying such a contract, the above cited statutes had not been complied with. In the case of *Lichty v. Daggett,* 23 S.D. 380, 121 N.W. 862, this court held that a letter from a landowner that stated,

"Would say that my land is for sale, the S ½ of 13-127—60, Brown Co. My net price is $5,000, which I think is not too high, $3,000 cash, $1,000, first mortgage $1,000. Will take second mortgage or will take up first mortgage and take first mortgage for $2,000.00 to myself at 6 per cent. int. to suit purchaser. Please let me hear from you soon.   *   *   *"

constituted simply an authority to the real estate agents to whom the letter was addressed to find a purchaser and did not confer upon the agents any authority to enter into a binding contract for the sale of the property in question. Similarly, in the case of *Purkey v. Harding,* 23 S.D. 632, 123 N.W. 69, this court held, that the telegram and letters from the landowner to the real estate agents, set forth specifically in the opinion in that case, did not constitute written authority to the agents to enter into a binding contract for the sale of the property in question and that the delivery by the owner of a deed in which no grantee was named, and an abstract of title to the property to a bank to be delivered to the agents upon payment of the purchase price did

not constitute a ratification of the unauthorized contract for the sale of the land.

We believe that the above mentioned cases are distinguishable from the case at bar. In none of these cases had the landowner negotiated directly with the would-be purchaser and arrived at the terms of the sale prior to the sending of the alleged written authorization to the agents. In *Dal v. Fischer*, supra, the owner signed no writing purportedly authorizing the agent to enter into a contract for the sale of the property. In *Lichty v. Daggett*, supra, the letter from the landowner was quite clearly an authorization that the agents should look for a purchaser with whom the landowner would conduct further negotiations. This was likewise the case in *Purkey v. Harding,* supra. In the instant case, however, there is no question but that plaintiff and defendant entered into an oral contract for the sale of the land during their telephone conversation on October 24, 1967.

Likewise, plaintiff gave Mr. Cameron oral authorization in her telephone conversation on November 3, 1967, to enter into a contract with defendant. Plaintiff's letters to Mr. Cameron of November 3 and November 8, 1967, together with the delivery of the executed warranty deed and abstract, constituted sufficient written ratification to satisfy the requirements of SDCL 59-2-4. *Townsend v. Kennedy,* 6 S.D. 47, 60 N.W. 164. Although the parties may have understood that the balance of the purchase price was payable on November 24, 1967, plaintiff's letter of November 8, 1967, to Mr. Cameron clearly ratified the statement in Mr. Cameron's letter to defendant of November 3, 1967, to the effect that the balance of the purchase price was to be paid by November 28.

Based upon the foregoing, we are of the opinion that the trial court erred in not adopting defendants' proposed findings and conclusions to the effect that an executory contract for the sale of the land exists between the parties, and that the trial court erred in entering judgment purportedly perfecting title to the land in plaintiff.

That portion of the judgment that states, "* * * said deed is hereby declared void, set aside, and passes no title.

* *" is affirmed; that portion of the judgment that states "* * * title to the property described above is perfected in the plaintiff * * *" is reversed. The case is remanded to the circuit court with directions to enter judgment in accordance with the views set forth herein.

DUNN, C. J., concurs.

DOYLE, J., concurs in result.

WINANS and COLER, JJ., dissent.

WINANS, Justice (dissenting).

I would reverse the holding of the trial court outright. Consequently I would not reach the question of the compulsory counterclaim.

The holding of the trial court is wrong because:

1. Plaintiff delivered the warranty deed to her agent and attorney and did not attempt to recall until after completion of abstract and receipt of full payment by her.

2. She made no attempt to return the down payment.

3. Defendant had a right to expect good title (no contention is made to the contrary) and Plaintiff was having the abstract brought "down to date" to show her title. This time period ought not be chargeable to Defendant.

4. Plaintiff knew Defendant was going to want more time than the 30 days. "I am sure Mr. Skoglund is going to want more time". With this knowledge on her part she did nothing to protect herself by word, act or deed until completion of the transfer.

I am not concerned that on appeal Defendant concedes that the finding that Mr. Cameron had no authority to deliver the warranty deed in August of 1968 is *probably* not clearly erroneous. It is clearly erroneous for the reasons I have given.

And again, though I would not reach the question of the compulsory counterclaim, I believe the law is contrary to the opinion of the majority. I think it was a compulsory counter-claim.

COLER, Justice (dissenting).

I would affirm the judgment of the trial court.

As I read the majority opinion, this court would require specific performance of a contract, the particulars of which are nebulously set forth in testimony relating to telephone conversations and in correspondence between the plaintiff and her attorney and between the attorney and the defendant and his lender and not aided by SDCL 43-26. The attorney, as agent for the plaintiff, clearly violated his trust and exceeded his authority as found by the trial court * amounting to fraud on his principal, SDCL 59-3-8. These findings were clearly supported by the evidence, SDCL 15-6-52(a), and the agent's acts are not binding on the plaintiff under these circumstances. SDCL 59-6-9, 59-6-10.

I believe the trial court quite properly construed the complaint of the plaintiff as an action to quiet title pursuant to SDCL 21-41 where lis pendens was filed pursuant to SDCL 21-41-12. While the summons may not have been in the language suggested by SDCL 21-41-7, the statute is directory, not mandatory, and is not consistent with subsequently adopted rules of this court as set forth in SDCL 15-6-4(a) and SDCL 15-6-8(a) through 15-6-8(f). The majority opinion implies that SDCL 21-50 is an exclusive remedy of the plaintiff. That implication is not supported under prior decisions of this court nor by the statutes. Certainly it would have been proper for plaintiff to proceed under SDCL 21-50-1 and 21-50-2; however, these laws provide

---

* Among the significant findings of the trial court, the following highlight the agent's fraud:

"(10) That on the 17th day of November, 1967, Milton Cameron without any authority from the plaintiff executed an option by the terms of which the defendant, Aldon Skoglund, was given sixty (60) days within which to complete the purchase and payments on the land in question."

"(17) That Milton Cameron delivering the warranty deed of the land in question to the defendants was contrary to the specific instructions of the plaintiff and without any authority by the plaintiff."

not an exclusive but rather a cumulative remedy to a vendor to enforce a lien declared to exist by virtue of SDCL 44-6-1. *Sorum v. Sorenson*, 1922, 45 S.D. 313, 187 N.W. 423. Plaintiff was not required to proceed on that theory and quite properly did not do so, SDCL 21-50-7, but sought recovery of the land. *Sweet v. Purinton*, 1918, 40 S.D. 17, 166 N.W. 161. The claim of the plaintiff is, essentially, that there had been a substantial breach of contract by the defendant authorizing rescission. SDCL 21-12-1, 53-11-2; *Dusek v. Reese*, 1963, 80 S.D. 96, 119 N.W.2d 656. For plaintiff to have proceeded under SDCL 21-50-1 would have required her to treat the contract as in full force and effect and thus deny her the claimed forfeiture. *Hickman v. Long*, 1914, 34 S.D. 639, 150 N.W. 298.

Defendant, on the other hand, relied solely on the premise that the contract had been fully executed and did not seek specific performance under SDCL 21-9. *Ford v. Hofer*, 1961, 79 S.D. 257, 111 N.W.2d 214. To reverse the trial court on this record and state a cause of action for the defendant which was not pleaded is unwarranted.