Lincoln AINSWORTH and Elaine Ainsworth, Plaintiffs and Appellants,

v.

FIRST BANK OF SOUTH DAKOTA, Defendant and Appellee,

and

Larry Byrne and Bruce Walker, Defendants.

No. 15648.

Supreme Court of South Dakota.

Considered on Briefs Aug. 31, 1987.

Decided March 2, 1988.
Rehearing Denied April 12, 1988.

Terry L. Pechota of Finch and Viken, Rapid City, for plaintiffs and appellants.

Keith Smit of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for defendant and appellee First Bank of South Dakota.

MILLER, Justice (on reassignment).

This is an appeal from the dismissal of a party on the grounds of failure to assert a compulsory counterclaim in a prior action. We reverse.

FACTS

Appellant Lincoln Ainsworth (Ainsworth) and his wife Elaine, commenced this action seeking damages against First Bank of South Dakota (Bank), Bruce Walker (Walker) an officer of Bank, and Larry Byrne (Byrne). The circuit court dismissed the claim against Bank and this appeal resulted.

A review of the record establishes that in 1982 Byrne developed a process whereby coal by-products, such as fugitive dust and spoilage, could be processed into coal pellets. The process promised to have significant commercial value. Byrne had various business loans with Bank in Sturgis, South

Dakota, generally related to his farm/ranch/cattle operations. Walker (who at all salient times was president and later vice-president of Bank) worked with Byrne to obtain financing for Byrne's business venture. Through Walker, Bank made commercial loans to Byrne for the project. Further, Walker was a private investor in the project and allegedly advanced personal monies in the venture.

Prior to October, 1982, Ainsworth was a Bank customer, who had recently become unemployed. In October, 1982, Walker introduced Ainsworth to Byrne and suggested that Ainsworth be hired to provide expertise and a marketing tool for the project. Byrne hired Ainsworth and allegedly agreed to pay him twenty percent of all profits from the venture. Ainsworth worked nearly two and one-half years on the project.

According to the complaint, Byrne's process met with some success. Ainsworth maintains the venture resulted in a $1 million deal with International Coal Pellet Corporation. Of this amount, Bank allegedly received $120,000 on sums it was due, but Ainsworth received only $20,000.

In a series of loans made between May and December of 1983, Bank (generally through Walker) loaned Ainsworths $71,000 for living expenses. Elaine Ainsworth co-signed notes in the amount of $38,700. According to Ainsworths, Walker represented that Ainsworths would be treated fairly; that monies loaned to Ainsworth would be repaid from the profits of the venture; and, that Walker and Bank would protect Ainsworth's interests.

In October, 1984, Bank sued Ainsworths to recover on these loans and in February, 1985, received summary judgment in that action (hereinafter denominated "first action"). Ainsworths did not appear at that motion hearing and did not appeal. Bank's summary judgment, however, went unsatisfied.

In July, 1985, Ainsworths brought this "second" action against Bank, Walker, and Byrne. The complaint alleged breach of contract against Byrne. The suit also sought damages from Walker and Bank alleging that Bank, through the action and conduct of its employee and officer, Walker (1) violated its fiduciary duty to act with the utmost good faith and honesty in dealing with Ainsworths; (2) failed to comply with banking statutes, regulations, policies, and procedures; (3) failed to inform Ainsworths of their respective interests in the success of Byrne; and, (4) failed to take all necessary steps to protect Ainsworth in his dealings with Byrne and the investors.

In June, 1986, Bank moved that it be dismissed from the lawsuit because of the failure of Ainsworths to raise their complaints against it through counterclaim in the "first action." The trial court, which based its decision solely on the pleadings and argument of counsel (apparently disregarding depositions and other matters in the record), dismissed Bank from the suit.

## ISSUE

WHETHER THE TRIAL COURT ERRED IN FINDING THAT CLAIMS ASSERTED IN AINSWORTHS' COMPLAINT WERE COMPULSORY COUNTERCLAIMS THAT SHOULD HAVE BEEN ASSERTED AGAINST BANK IN A PRIOR ACTION.

The trial court held that Ainsworths' claims were compulsory counterclaims that should have been asserted in the "first" action brought by Bank on the promissory notes. Ainsworths argue on appeal that their claim against Bank does not "arise out of the transaction or occurrence that is the subject matter of the opposing party's claim," in that the "second action" is based on Bank's alleged breach of fiduciary and statutory duties and intentional conduct by Bank toward Ainsworths.

We have ruled that the "logical relation" test is the appropriate standard to apply when determining whether a counterclaim is compulsory or permissive. *Staab v. Skoglund,* 89 S.D. 470, 234 N.W.2d 45 (1975); *Olawsky v. Clausen,* 87 S.D. 578, 212 N.W. 2d 653 (1973). The purpose of our compulsory counterclaim statute, SDCL 15–6–

13(a),[1] is "to reduce the volume of litigation and promote the just, speedy, and inexpensive determination of controversies by barring relitigation of the same set of facts." *Staab*, 89 S.D. at 479, 234 N.W.2d at 50. In fact, "[h]arsh consequences [will] result from the failure to plead a compulsory counterclaim." *Olawsky*, 87 S.D. at 582, 212 N.W.2d at 655 *citing National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43 (2d Cir.1961).

■ A critical circumstance here is that the trial court, under the compulsory counterclaim ruling, dismissed only Bank from the lawsuit. Remaining are Byrne (for whom this entire business enterprise was created) and Walker (a former president and current vice president of Bank). Byrne and Walker were the principal players in the factual scenario centering around Ainsworths' lawsuit. Since Byrne and Walker were not parties to the "first action" on the notes, Ainsworths obviously could not have asserted a compulsory counterclaim against them, even had their former attorney[2] considered that possibility.

Bank, which had the burden to present the merits of its motion to dismiss, presented no evidence to the trial court. In their argument, which was not controverted by Bank, Ainsworths state that the loans involved in the "first case" were personal loans for living expenses. We believe that the record, taken as a whole, supports Ainsworths' argument that the loans were for private purposes and not logically connected with the transactions involved in this present litigation. Some facts garnered from the record which support this proposition are as follows:

1. In his deposition, Mayer (Bank's vice president) indicates that he, in addition to Walker, was involved in the personal loans to plaintiffs and that his assumption was that these loans were for living expenses, travel, etc. There is no indication whatsoever that the loans were for anything other than private purposes.

2. Mayer further testified in his deposition that Walker was principally in charge of the credit line for both Byrne and Ainsworths until 1984, when he (Mayer) took charge of Ainsworths' loans.

3. Attached to Mayer's deposition are various bank records including loan applications, review reports, and memos of the oversight committee dealing with Byrne's business venture involving the coal pelletizing machinery, processes, and its general dealings. There are numerous entries in these bank records referring to the business, including those with the Schultz Coal Sales and others dealing in the business operation. The only mention of plaintiffs in any of these records is in the March 2, 1984, comment sheet indicating (1) that of the $100,000 down payment from Schultz Coal Sales, $20,000 was to be paid to Linc Ainsworth, and (2) of the $650,000 due from Schultz Coal on June 1, 1984, plaintiffs were to receive $130,000. Of significant importance is the fact that nowhere in any of these comment sheets is any mention made of any loans, personal or otherwise, to Ainsworths.

4. In the "first action," which was disposed of by a non-contested summary judgment, the affidavit in support of summary judgment was made by Mayer. Nowhere in his affidavit, nor for that matter nowhere in the "first action" file, is there any mention of any relationship between Ainsworths and Byrne or his enterprise. Further, Walker's name is not reflected on any of the notes or other documents. In fact, Mayer's affidavit indicates that it was *he* (Mayer) who had met on several occasions with Ainsworths and who had requested payment in full (again no mention of Walker).

---

1. SDCL 15–6–13(a) provides, in part:

    A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim....

2. Ainsworths' counsel in the "first action" did not represent them in this second action.

Thus, we conclude that, as a matter of law, there is no "logical relationship" between the personal loans to Ainsworths and the litigation centering around the coal pelletization process. The record does not support the conclusion that the loans arose out of the same transaction or occurrence. Therefore, there is no compulsory counterclaim and Bank should not have been dismissed from this suit.

Reversed.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., and SABERS, J., dissent.

WUEST, Chief Justice (dissenting).

The record is not clear as to the degree of success Brynco Corporation eventually achieved. The indications are that ICP Corporation paid Byrne a $100,000 cash advance and promised him payment of an additional $650,000. Ainsworth received $20,000 from Byrne and was set to receive another $130,000 when the remaining $650,000 was realized. What later seems to have occurred is the ICP deal fell through, Byrne and the Bank settled for the partial payment of Byrne's debt by ICP, and the Bank ended its relationship with Byrne after its foreclosure on the Byrne residence. What began as a promising business venture failed to develop the profits everyone expected.

"Ainsworth claims he did not receive everything he was due from Byrne. He also claims he did not receive everything he was entitled to from Bank. Although Ainsworth's contract was with Byrne, he partially blames Bank for leading him down the road he eventually found himself on. The question is whether Ainsworth should have raised these arguments when Bank sued to recover on the notes rather than waiting until now to assert those claims.

The purpose of the compulsory counterclaim rule is to prevent multiplicity of actions and to achieve a just resolution in a single lawsuit of all disputes arising out of common matters. *See Olawsky v. Clausen*, 87 S.D. 578, 212 N.W.2d 653 (1973).

Since the exceptions stated in the rule adequately safeguard a party, courts should give the phrase "transaction or occurrence that is the subject matter of the suit" a broad realistic interpretation in the interest of avoiding a multiplicity of suits. 3 Moore's Federal Practice par. 13.13 (1985).

The rule has been given a broad construction to provide a liberal basis for joining all related claims. *See Warshawsky & Co. v. Arcata Nat. Corp.*, 552 F.2d 1257 (7th Cir.1977); *Annis v. Dewey County Bank*, 335 F.Supp. 133 (D.C.S.D.1971). At the same time, however, a compulsory counterclaim must be pleaded or it is barred. As we stated in *Olawsky*, "[H]arsh consequences result from the failure to plead a compulsory counterclaim." If a defendant is in any doubt as to the nature of his counterclaim, whether permissive or compulsory, careful practice requires him to plead it in order to protect himself.

In view of the imprecision of the "transaction or occurrence" language, the courts have developed a number of standards to aid in deciding when a counterclaim is sufficiently related to the main claim to be compulsory. *Olawsky, supra.* The term "transaction" within the purview of the compulsory counterclaim rule "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." *Olawsky*, 212 N.W.2d at 655, *quoting Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926).

Appellants on one hand argue there is no "logical relationship" between the advances received from Bank and the complaint against Walker and Bank. On the other hand, however, they assert Ainsworth accepted the loans only after being encouraged to work on the Byrne project and after receiving certain assurances from Walker that were allegedly made in his capacity as bank officer. As stated in the complaint, the basis for appellants' lawsuit against the bank is Ainsworth's reliance on alleged representations Walker made to him, as well as certain omissions where Ainsworth claims he should have been advised. Relevant portions of the complaint

relied upon by the trial court in its ruling include the following:

V. "...Defendant Walker advised Lincoln Ainsworth, who was financially embarrassed at the time, that he would provide financing to him in order to undertake the marketing endeavor."

VI. "Plaintiff Lincoln Ainsworth and Defendant Bruce Walker and First Bank had a trust relationship, and by virtue of such relationship Ainsworth placed explicit faith, trust, and confidence in and he relied upon the representations made by defendant that he would be treated fairly, that the monies advanced to him as loans would be repaid from the profits of the process, and that Defendants would act to protect his interests."

XII. "At no time prior to the time of the loans made to Plaintiff Lincoln Ainsworth did Defendant Bruce Walker advise Plaintiff that Larry Byrne was heavily indebted to First Bank, that he had no further credit available at the Bank, that Bruce Walker had a personal investment in Byrnco Industries, that applicable banking policies and procedures were not followed, and that it was in the Bank's best interest to loan to Plaintiff Lincoln Ainsworth money so that the financial success of Byrnco Industries would be assured."

In essence, the complaint alleges that Ainsworth was led to believe the bank would await payment on his promissory notes until he received his share of profits from the venture. When Bank started its action on the promissory notes, Byrne allegedly had not yet honored his promise to Ainsworth. The assurances of good faith went so far that, as Ainsworth's counsel indicated to the trial court, when the notes became due, Ainsworth negotiated for and thought he had received assurances of payments from Walker and Bank which he could apply to the notes.

There is a logical relationship between the two claims, regardless of whether the loan money was used solely for living expenses or whether it was also used on behalf of the business effort. Suits on notes will inevitably deal with circumstances of execution and any representation made to "induce" the borrowing. More-over, the demand for payment is logically connected to Ainsworth's claim that he did not receive the benefit of certain representations made later.

Ainsworth may have suffered other damages in addition to the judgment debt on the notes, but it is clear the debt incurred by Ainsworth was part of the overall change of position he allegedly made in reliance on the representations. If, after the notes became mature Ainsworth brought suit first, Bank's right to receive payment on the loans would be a compulsory counterclaim, and it would certainly not want to allow its debtor to recover without taking the loans into account. Since there is a logical relationship between each party's claim, Ainsworth should have asserted his complaint against Bank in the first action. It was a compulsory counterclaim.

The majority stresses that Walker and Byrne were retained as individual parties in the second action while Bank was dismissed. It then, in my opinion, places unnecessary significance on the fact that Ainsworths could not have asserted a compulsory counterclaim against *Walker or Byrne* because they were not parties to the first action. Ainsworth chose not to contest his debt to Bank in the first action. Therefore, there was simply no impetus for joining either Walker or Byrne. Had Ainsworth brought his compulsory counterclaim against Bank, he would have necessarily included its agent, Bruce Walker, in his capacity as a bank officer. If not, Bank could have joined Walker by cross-claim. Nevertheless, the critical issue is not whether Ainsworth could have achieved joinder of all the parties in one lawsuit. The critical point is that Ainsworth's claim against Bank, and against its agent, Bruce Walker (in his capacity as bank officer), was logically related to Bank's original action, and he should have raised it then.

I would affirm.

SABERS, J., joins in this dissent and authorizes me to so state.