**Dale E. DRAKE and Shirley Drake, Plaintiffs and Respondents,**

v.

**Ernest SAMPLE and Carrie Sample, Defendants and Appellants.**

**No. 12159.**

Supreme Court of South Dakota.

Argued April 13, 1978.

Decided June 7, 1979.

Rehearing Denied July 13, 1979.

Irving A. Hinderaker of Austin, Hinderaker & Hackett, Watertown, for plaintiffs and respondents.

Dale E. Bradshaw of Loucks, Oviatt, Bradshaw, Green & Schulz, Watertown, for defendants and appellants.

DUNN, Justice (on reassignment).

This case involves an action brought by Dale and Shirley Drake for a declaratory judgment seeking a declaration of the rights of the parties under an alleged oral agreement, which was supported by written memoranda, with Ernest and Carrie Sample for the sale of real property. The Samples pled the statute of frauds and rescission prior to acceptance as defenses. The trial court found in favor of the Drakes and rendered a judgment accordingly. We affirm.

The real property that is the subject of this litigation is owned by the Samples and was leased to the Drakes in 1973. Sometime during 1973, the parties discussed the sale of the real property. This discussion arose out of an earlier negotiation between the Samples and a third party regarding the sale of the property. When negotiations with the third party were terminated, the Drakes and the Samples entered into an oral contract for the sale of the property under the same terms and conditions as those the Samples had offered to the third party. The terms and conditions of the agreement were that the property would be sold for $75 per acre for 375 acres on a contract for deed, a down payment of $5,000 would be made, annual payments would be $1,000, plus interest at 7% per annum, and there would be a prepayment privilege. The transaction was to be entered into after January 1, 1974, for tax purposes. The Drakes, who were already in possession as lessees, were to have possession under the contract for deed for the 1974 season and were to pay the 1974 and subsequent real estate taxes.

In an effort to reduce the oral agreement to writing, the parties went to some financial institutions seeking out forms upon which to transcribe their contract. When these forms proved to be unsatisfactory, Mr. Sample hired attorney Gordon Gunderson to reduce the agreement to writing. After several contracts were drafted, Mr. Gunderson was unable to reduce the agreement to writing to the satisfaction of the Samples. The difficulties were aggravated further because of the fact that the Samples spent the winter of 1973–74 in Texas. The Samples wrote letters to Mr. Gunderson and to the Drakes specifically referring to the contract for the sale of the property and embodying the exact terms agreed upon. Additionally, Mr. Sample made corrections on one of Mr. Gunderson's contract drafts and affixed his signature to the corrections. Upon their return from Texas in July of 1974, the Samples attempted to withdraw from their agreement to sell the property to the Drakes.

The trial court concluded that there was an oral agreement between the parties for the sale of the real property and that there were sufficient written memoranda evidencing the existence of a contract to satisfy the statute of frauds. Judgment was entered accordingly, and the Samples appeal from the judgment.

On our review of the appeal, the successful party is entitled to the benefits of his version of the evidence and of all inferences fairly deducible therefrom which are favorable to the judgment of the trial court. *Mobridge Community Industries v. Toure,* 1978, S.D., 273 N.W.2d 128; *Cunningham v. Yankton Clinic, P. A.,* 1978, S.D., 262 N.W.2d 508. The findings of the trial court upon conflicting evidence are presumed to be correct, and we will not set such findings aside unless they are clearly erroneous. SDCL 15–6–52(a). In applying the clearly erroneous standard of review, the question is not whether we would have made the same findings as those of the trial court but whether, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. *Mobridge Community Industries v. Toure,* supra; *Cunningham v. Yankton Clinic, P. A.,* supra.

After reading the record and with this standard of review in mind, we must come to the conclusion that the parties entered into an oral agreement for the sale and purchase of the real property in question during the spring and summer of 1973. The Samples agreed to sell their land to the Drakes on the same terms which had been

offered to another neighbor. The fact that an oral agreement was indeed entered into by the parties was evidenced in part by Mr. Drake's reliance on the representations of Mr. Sample that they had an agreement in that Mr. Drake contacted adjoining land-owners, including the railroad, the state, and private neighbors, regarding the joint improvement and repair of fencing along the boundaries of the property which is the subject of this litigation. The fact that an oral agreement was entered into by the parties was further evidenced when Mr. Sample accompanied Mr. Drake to the Farmers Home Administration and the Production Credit Association in order to secure forms upon which the contract could be transcribed. Inasmuch as the forms were not satisfactory to Mr. Sample, he turned to Gordon Gunderson, an attorney who had handled family business on a previous occasion, to prepare a written contract for deed incorporating the terms which had been orally agreed upon by the parties. The terms of the contract were fully understood by the parties. In fact, Mr. Sample testified that there was never any misunderstanding between the parties about the purchase price to be paid for the property or about any of the other terms. It appears from the record that the only one who did not fully understand the terms agreed upon was Mr. Gunderson.* The record reveals that the Samples left a contract for deed with the Drakes. The contract had been prepared by Mr. Gunderson and was signed by the Samples prior to their annual vacation in Texas in the fall of 1973. The Drakes were to read the contract, and if it was satisfactory, they were to mail it to Mr. Gunderson and go to his office after January 1, 1974, to sign it. This delay in signing by the Drakes was purportedly for the benefit of the Samples on their 1973 income taxes. When the Drakes went to Mr. Gunderson's office on January 22, 1974, to sign the contract already containing the Samples' signatures, Mr. Gunderson could not locate it. Another contract was prepar-ed by Mr. Gunderson, although he could not recall what the terms of the first contract were. The Drakes signed this second contract, and it was sent to Texas for the signatures of the Samples. Mr. Sample responded on January 29, 1974, in a letter to Mr. Gunderson advising him there were 380 acres involved instead of 375 acres. This changed the total contract price from $28,-125 to $28,500. Mr. Sample also reminded Mr. Gunderson of the terms previously agreed upon by the parties, a $5,000 payment upon execution of the contract with annual payments of $1,000 thereafter subject to the privilege of prepayment. Also on January 22, 1974, Mrs. Sample wrote a letter to the Drakes with language almost identical to that conveyed to Mr. Gunderson by Mr. Sample. On February 1, 1974, Mr. Gunderson prepared a third contract for deed. He incorporated Mr. Sample's instructions with the exception of the down payment provision which provided for the payment of $1 on the date of execution and a payment of $4,999 on July 1, 1974. Mr. Gunderson explained to Mr. Drake that he drew the contract this way because there would be no need for the full down payment until the Samples returned to South Dakota from Texas. Mr. Gunderson mailed a copy of this third contract to the Samples in Texas for their review. Mr. Sample revised the provisions of the contract regarding the down payment to provide $5,000 at or before the execution of the contract and the annual installments of $1,000, plus interest, to be paid on the anniversary date of the execution of the contract. After making the revisions on the contract, Mr. Sample wrote the following words at the bottom of the contract: "This is the way I want it E. A. Sample." With his signature affixed, Mr. Sample mailed the document to Mr. Gunderson. Mr. Gunderson then prepared a fourth contract incorporating the handwritten notations Mr. Sample had made on the third contract. Mr. Gunderson mailed the fourth contract to Mr. Sample in Texas with a letter of transmit-

---

* Mr. Gunderson testified that Mr. Sample relayed to him in a phone conversation that he was having problems understanding what Mr. Sample wanted and that Mr. Sample told him that he "still hadn't gotten the contract drawn the way it was supposed to be done."

tal dated February 15, 1974. The record reveals that nothing more took place regarding the contract for deed until the Samples returned to South Dakota in July of 1974, at which time the Samples advised the Drakes that their agreement was off.

On the basis of these facts, the trial court found that there was an oral agreement between the parties for the purchase by the Drakes from the Samples of the real property involved in this litigation. There is nothing in the record which seriously contradicts the findings of the trial court in this regard, and we conclude that the trial court finding was not clearly erroneous.

■ Our statutes require that an agreement for the sale of real property is not enforceable unless the agreement or some memorandum thereof is in writing and subscribed by the party to be charged in an action to enforce the agreement. SDCL 53–8–2. The memorandum serves to furnish written evidence of the obligation to be enforced against the party who subscribes his name to the memorandum; that is, a memorandum is not required to make a contract but merely to evidence in writing that a contract has been entered into. 72 Am.Jur.2d, Statute of Frauds, § 285. In order to meet the requirements of our statute, it is sufficient that the substance of a contract for the purchase of real property is inferred from the writing, even though the writings are made up of disjointed memoranda or protracted correspondence. *Townsend v. Kennedy*, 1894, 6 S.D. 47, 60 N.W. 164. For a situation analogous to the present case, see *Staab v. Skoglund*, 1975, 89 S.D. 470, 234 N.W.2d 45, in which we found that where a vendor made an oral agreement with another for the sale of land, then told his attorney about the agreement and orally instructed the attorney to handle the transaction, the vendor's subsequent letters to the attorney concerning the transaction, together with sending him the warranty deed and abstract, constituted sufficient written ratification of the oral instructions to create an executory contract for the sale of the land.

■ The trial court found that there were sufficient written memoranda embodied in the third contract for deed revised by Mr. Sample and subscribed by him in his own handwriting, as well as in the letter dated January 29, 1974, handwritten and signed by Mrs. Sample to the Drakes, to render the oral agreement enforceable. This document and correspondence are sufficient to meet the requirements of our statute of some memorandum in writing subscribed by the party to be charged. We conclude that the trial court finding in this regard was not clearly erroneous.

■ In their brief, the Samples seem to attribute the delay in getting the oral agreement of the parties into writing to affirmative actions of the Drakes, whereas the record supports the contrary conclusion that the delay was the result of poor communication between the Samples and their own attorney. This communication problem has no effect on the oral agreement of the parties and the embodiment of the agreement in written memoranda. Additionally, the Samples confuse the existence of an executory contract for the sale of real property with the Drakes' ability to perform—such as in tendering the down payment—according to the terms of that contract. Contrary to the view expressed by the Samples regarding the down payment, the only evidence in the record regarding performance is that the Drakes are ready and willing to perform the purchasers' obligations under the contract and have tendered the down payment and continue to tender the down payment. The fact that the Samples perceived that the Drakes might have difficulty making the down payment does not affect the validity of the contract itself. The existence of the contract and the performance of the contract are separate considerations.

The judgment of the trial court is affirmed.

WOLLMAN, C. J., and HENDERSON and FOSHEIM, JJ., concur.

MORGAN, J., dissents.

MORGAN, Justice (dissenting).

I dissent.

The majority opinion gives too much credence to the trial court's findings, and overlooks what it failed to find! The trial court completely ignored the issue of conditional offer which was properly before it.* By affirming this decision we have effectively foreclosed anyone from requiring a written contract before they are to be bound, because I cannot conceive of any set of circumstances where a party could do more to indicate such intention than the Samples have in this case. This is a dangerous precedent to set on this record.

The trial court has rewritten. the contract. There is nothing clearer in the record than that Samples wanted $5,000 down shortly after January 1, 1974, and the balance on payments with interest at seven percent from that date. First, Attorney Gunderson rather magnanimously decided that Drakes should have six months' interest-free use of the land, and then the trial court gratuitously extended that to approximately three years in its decision of December 15, 1976.

---

* The lapse of some thirteen months between the trial and the trial court's memorandum decision considerably detracts in my mind from the presumption of correctness upon which the majority relies.