290 N.W.2d 498 (1980)
In the Matter of the Dependency and Neglect of B. A. M., a Minor.
No. 12727.
Supreme Court of South Dakota.
Argued November 8, 1979.
Decided March 26, 1980.
*500 Harvey C. Jewett of Siegel, Barnett, Schutz, O'Keefe, Jewett & King, Aberdeen, for respondents custodial parents.
Douglas R. Bleeker of Shandorf, Bleeker, Boldt & Koch, Mitchell, for appellant father.
HENDERSON, Justice.

ACTION
G.M., father and appellant, appeals from an adjudication of dependency and neglect and a disposition permanently terminating his parental rights to B.A.M., a minor. The mother of B.A.M. is deceased. Respondents, B.G., a cousin of the deceased mother, and her husband, J.G., presently have custody of B.A.M. by virtue of the trial court's order that they be permitted to adopt B.A.M. Although represented by counsel, no brief was filed on B.A.M.'s behalf. We affirm.

FACTS
B.A.M. was born December 3, 1970, to the union of appellant, G.M., and the deceased mother, M.M. The parents of B.A.M. were originally residents of the State of South Dakota. At the time of M.M.'s death, B.A.M. was living with her father and mother in Overland Park, Kansas. M.M. died on October 21, 1974, at her home in Kansas, by strangulation at the hands of appellant. Appellant was tried and convicted for first-degree murder, but the conviction was reversed by the Kansas Supreme Court. He was later retried and convicted of second-degree murder; the conviction was affirmed. On April 26, 1976, appellant was sentenced to a term of imprisonment to run from ten years to life in the Kansas State Prison, where he is now incarcerated.
During the proceedings below, respondents saw fit to introduce, and the trial court accepted into evidence, the entire proceedings of the murder trial and appellant's judgment of conviction entered in the State of Kansas. The trial court, based upon that record and the testimony in these proceedings, entered Findings of Fact and Conclusions of Law. These findings included, in part, the fact that the appellant not only strangled his wife to death, but then set fire to the family's home in an attempt to cover up the murder. Tragically, B.A.M. was in the home during the murder and was exposed to grave danger in the fire. In fact, her hair was singed and she vomited from inhaling a great deal of smoke. At the time of the murder, appellant was having an extramarital affair with an unmarried woman and exposed B.A.M. to this conduct. Indeed, on the very day of the murder, appellant took B.A.M. on an excursion with this woman.
Subsequent to the murder, and prior to his arrest, appellant brought B.A.M. to South Dakota and placed her with his mother for a short period of time. B.A.M. was then placed by appellant with the maternal grandparents in Mitchell, South Dakota, where she was loved and taken care of for one year and seven months. Thereafter, by court order and at the age of five and one-half years, she took up residency with the respondents at Aberdeen, South Dakota where she still resides. At the time of trial, she was age seven and one-half years.
The trial court found that the appellant had abandoned B.A.M.; that he had left her homeless; that it would be psychologically harmful for B.A.M. to be returned to the care, custody, and control of appellant; that respondents had obtained custody of B.A.M. under the circumstances outlined above, but additionally, because the deceased mother had asked respondents to care for B.A.M. should anything ever happen to her or appellant; that respondents were affording B.A.M. a normal, stable environment, and that her best interests would be served by remaining within the family of respondents who have other children; that B.A.M. had no emotional attachment to appellant; that B.A.M. lacked proper parental care through *501 appellant's gross misconduct in murdering B.A.M.'s mother; that appellant does not provide the proper and necessary subsistence, education, medical care, and fails to support B.A.M.; that B.A.M. is a dependent and neglected child within the meaning of our state statutes; that it would be in the best interests of B.A.M. that the parental rights of appellant be permanently terminated; and that it would be in the best interests of B.A.M. to remain in the permanent care, custody, and control of the respondents and that they be permitted to adopt B.A.M.

ISSUES
The following issues are presented:

I.
Did the trial court improperly admit into evidence the authenticated copies of appellant's judgment of conviction and the complete trial transcript of his murder trial? We hold that it did not.

II.
Did the trial court improperly find, by a preponderance of the evidence, that the appellant set fire to the family home, thereby exposing B.A.M. to the hazards of fire? We hold that it did not.

III.
Did the trial court properly find that B.A.M. heard or saw some of the events involving the murder of her mother, thereby creating trauma and an emotional detachment from the appellant? We hold that it did.

IV.
Did the trial court properly find that B.A.M. would have psychological problems if she were returned to the appellant? We hold that it did.

V.
Did the trial court improperly find that appellant abandoned his daughter and that his parental rights should be terminated? We hold that it did not.

DECISION

I.
Appellant contends that the admission of the transcript of his murder trial was highly prejudicial and that his conviction has little bearing on the court's determination of whether B.A.M. is dependent or neglected within the terms of SDCL 26-8-6 or upon his fitness to have custody. On the contrary, such evidence was relevant and bore directly on the factual issues involved and was therefore not prejudicial.
The Supreme Court of Washington in addressing this issue held:
[A] parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as are the parent's conduct prior to imprisonment and during the period of incarceration.
In Re Sego, 82 Wash.2d 736, 740, 513 P.2d 831, 833 (1973). Likewise, in In Re Welfare of Scott, 309 Minn. 458, 244 N.W.2d 669 (1976), the Supreme Court of Minnesota held that the evidence introduced at the hearing regarding the trauma to which the child was subjected by appellant shooting the child's mother within his presence was properly admitted. The court held that it was not the incarceration per se, but rather the conduct showing the volatile nature of his personality which resulted in his imprisonment, that justified the termination of his parental rights.
Here, the production of the transcript revealed the volatile nature of appellant's conduct. Appellant's actions in murdering his wife and setting fire to the house exposed B.A.M. to grave danger and caused her to suffer great emotional trauma. Accordingly, since this evidence was of probative force, the court did not err in receiving authenticated copies of the Kansas proceedings.

*502 II.
Appellant argues secondly that there was insufficient evidence to support the court's findings that he strangled his wife and then set fire to their bedroom in an attempt to cover up the murder; that B.A.M. was present in the home at the time of the murder of her mother and the fire therein; that B.A.M. inhaled a great deal of smoke causing her to vomit; and that the child's close proximity to the fire resulted in the singeing of her hair.
Our standard of review on this issue, as well as on all issues herein presented, is that set forth in Drake v. Sample, 279 N.W.2d 685, 687 (S.D.1979), wherein we stated:
The findings of the trial court upon conflicting evidence are presumed to be correct and we will not set such findings aside unless they are clearly erroneous. SDCL 15-6-52(a). In applying the clearly erroneous standard of review, the question is not whether we would have made the same findings as those of the trial court but whether, on the entire evidence, we are left with a definite and firm conviction that a mistake ha[d] been committed.
This court specifically addressed this issue with respect to dependency and neglect cases in Matter of N.J.W., 273 N.W.2d 134, 138 (S.D.1978): "The findings of fact made by the lower court are binding upon this court unless we are satisfied that they are contrary to a clear preponderance of the competent evidence and are therefore `clearly erroneous.'"
We are convinced after reviewing the entire record and the trial transcript, that the findings of fact and conclusions of law entered by the trial court are supported by competent evidence and that a mistake has not been committed.

III.
Appellant's contention that there was insufficient evidence to support the trial court's findings that B.A.M. was cognizant of the events surrounding her mother's murder and that she has no emotional attachment to her father is not well taken. On the contrary, two psychologists, Dr. Glen Shaurette and Dr. Carl Rutt, who both examined B.A.M., agreed that she had no emotional attachment to her father.
Testimony adduced at trial indicated that B.A.M., remembering the fire, became upset when she heard fire engine sirens sounding. There was also testimony which indicated that she was present and aware of the happenings on the tragic night her mother was murdered. A grandparent testified that B.A.M. had remarked that the spanking and shouting was awful and that she heard her mother cry, "Help, help." She remembered hearing the phone falling on the floor and yelling, "Stop it, stop it." It was soon thereafter, as recited by the grandparent, that "her dad came out with an owie." When asked if she would ever comment further, the grandparent responded, "No. She said she wouldn't talk about it. She would stop right then." We hold that the trial court had ample evidence before it to conclude that this nightmare caused B.A.M. to suffer a great mental trauma.

IV.
Appellant next contends that there was insufficient evidence for the court to enter the following finding: "That at the present, B.A.M. has suppressed from her conscious memory most of the events surrounding the death of her mother which suppression is a healthy development, and a return to her father may prematurely unearth such memories causing severe psychological problems." The court's finding is supported by the testimony of psychologists who reached the same conclusion. There was no testimony offered which disputed this expert analysis. Obviously, the findings of the trial court were not clearly erroneous. SDCL 15-6-52(a); In the Interest of D.K., 245 N.W.2d 644 (S.D.1976).

V.
Appellant lastly, contends that there was insufficient evidence to support *503 the trial court's conclusion that: (1) he had abandoned his child and (2) his parental rights should be permanently terminated. SDCL 26-8-22.5 requires that the State prove the allegations set forth in its petition by a preponderance of the evidence. There is no realistic way in which appellant, while incarcerated in prison, is able to provide for B.A.M. Appellant's incarceration is of a long duration. Evidence as to the probability of future adequate care is competent and may serve as a basis for termination of parental rights. In re K.D.E., 87 S.D. 501, 210 N.W.2d 907 (1973). Her life must go on with daily support of caring individuals in a stable home environment. Were it not for the compassionate interest exhibited by respondents, B.A.M. would be homeless, insofar as her parents are concerned, due to the gross misconduct of appellant in murdering B.A.M.'s mother. Appellant has not supported B.A.M. with the necessities of life, and we uphold the trial court's ruling in finding that B.A.M. was abandoned by appellant. Lastly, we conclude that the trial court properly terminated appellant's rights on the basis that it was in the best interests of B.A.M. Appellant has a history of volatile temperment; he has displayed acts of immorality by carrying on an extramarital affair in the presence of the child; he has failed to provide B.A.M. with the necessities of life and cannot provide her with a stable home environment; and he has caused her great emotional harm. Accordingly, we cannot conclude that the trial court's findings are clearly erroneous. Matter of R.Z.F., 284 N.W.2d 879 (S.D.1979).
The judgment below is affirmed in its entirety.
WOLLMAN, C. J., DUNN and FOSHEIM, JJ., and MILLER, Circuit Judge, concur.
MILLER, Circuit Judge, sitting for MORGAN, J., disqualified.