In the Matter of R.H., L.H., S.H., S.H., E.H., and F.H., alleged dependent children.

Nos. 13115, 13116.

Supreme Court of South Dakota.

Argued Nov. 21, 1980.

Decided Jan. 7, 1981.

Janice C. Godtland, Asst. Atty. Gen., Pierre, for appellee State of South Dakota;

Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Michael A. Lyons of Doyle, Mahoney & Lyons, Sioux Falls, for appellant mother K. H. D.

Sidney B. Strange of Strange & Strange, Sioux Falls, for appellant father B. H.

Richard Johnson, Sioux Falls, for alleged dependent children.

DUNN, Justice.

This is an appeal from a decision terminating appellants' parental rights to their six children, R.H., L.H., S.H., S.H., E.H., and F.H. Appellants will be referred to as B.H., the father, and K.H.D., the mother. We affirm in part, and reverse in part.

B.H. and K.H.D. were divorced in March of 1976. Six children were born to this union. Initially, the children were placed in the custody of K.H.D. The care which these children received while in K.H.D.'s custody was dreadful at best and bordered on inhuman. K.H.D. housed the children in a trailer house where they were forced to live in squalid conditions without adequate supervision. These conditions included an inoperable water system, requiring that they secure water from their neighbors and rendering the toilet facilities inoperable. The lack of toilet facilities resulted in highly unsanitary living conditions, as was evidenced by a bathtub filled with human waste, together with human and animal feces being found in various locations of the family residence.

The children were transferred to six or seven different schools during the time they were in K.H.D.'s custody and were frequently truant from school. When they were at school, they were generally unclean.

During this time, two adult males were living with K.H.D. and her children. The presence of these men necessitated the forfeiture of some of the children's beds, resulting in certain children being required to sleep upon the floor.

Aside from the feculent conditions, supervision of the children by K.H.D. was non-existent. K.H.D. could not force certain children to attend school regularly, and R.H. was arrested for shoplifting while in the custody of his mother. It was in light of these conditions that a dependency or neglect action was commenced.

In March of 1977, both K.H.D. and B.H. entered into a stipulation that the children were dependent. At that time the court chose to place the children in the temporary custody of B.H. The parental rights of the parents were not terminated at that time; however, conditions were imposed upon the parents to allow maintenance of their parental rights.

The present action arose from an application, filed on July 24, 1979, requesting termination of K.H.D. and B.H.'s parental rights. A dispositional hearing was commenced on September 11, 1979, and was continued until October 23 and 24, 1979. Findings of fact, conclusions of law, and a decree of disposition were entered on March 20, 1980, resulting in the termination of parental rights of K.H.D. and B.H. It is from this termination that K.H.D. and B.H. appeal.

This court has recently dealt with a similar stipulation in *Matter of J. M. A.*, 286 N.W.2d 324 (S.D.1979). K.H.D. and B.H. explicitly agreed that the children were dependent, as contemplated by SDCL 26–8–6. Further action was deferred upon fulfillment of the conditions imposed in March of 1977. "[T]he stipulation limited the State's burden of proof [in terminating their parental rights] to a showing that the parents failed to act in accordance with the conditions set forth in the stipulation." *J. M. A.*, supra, at 327. The pertinent portion of the K.H.D. and B.H. stipulation provides:

Respondent parents specifically waive their right to separate adjudicatory and dispositional hearings herein and agree that, upon further hearing, if any, it shall be sufficient for the State to show their lack of cooperation with the proposal set forth in item "5" above or such other or additional provisions as the Court may impose or their lack of progress toward achieving suitability and fitness as par-

ents to justify termination of their parental rights in and to said children and the placement of said children for adoption or other suitable placement.

Based upon the stipulation and findings of fact made by the trial court, the appellants' parental rights were terminated.

Both K.H.D. and B.H. raise only one meritorious issue on appeal. They contend that the findings of fact were clearly erroneous. We stated in *Matter of A. M.*, 292 N.W.2d 103, 105 (S.D.1980), the standard of review of a trial court's findings of fact as:

> We have repeatedly held, in a long line of cases, that the trial court's findings of fact cannot be set aside unless they are clearly erroneous and we are, after a review of all the evidence, left with a definite and firm conviction that a mistake has been made.

See *Matter of B. A. M.*, 290 N.W.2d 498 (S.D.1980); *Matter of B. E.*, 287 N.W.2d 91 (S.D.1979).

■ We shall first apply this standard to the finding of fact challenged by K.H.D. We begin by stating that the question is not whether we would have come to the same findings as made by the trial court. *Matter of B. A. M.*, supra. To reverse, we must hold that the findings of fact are clearly erroneous and leave us with a firm and definite conviction that a mistake has been made. After a careful review of the record, we cannot say that the findings as they relate to K.H.D. rise to this standard.

■ K.H.D. challenges Finding VI.[1] There is, however, evidence to support Finding VI in the record. Beginning in February of 1979, K.H.D.'s contact with the children increased. Although we would normally commend such action, in this case K.H.D. tried to manipulate the children. It appears that K.H.D. agitated the children and tried to encourage them to leave B.H. and to live with her. R.H. was picked up for grand larceny while he was visiting K.H.D. M.H., an emancipated daughter, testified that R.H. had told her that the reason he got into this trouble was to avoid moving to Minnesota with B.H., which would remove him from the vicinity of K.H.D. Also, L.H. was apparently encouraged by K.H.D. to run away. Moreover, it appears that when asked by the social workers, K.H.D. and her current husband denied knowing the whereabouts of L.H.; however, M.H., testified that K.H.D. definitely knew of the whereabouts of L.H. This further indicates a "lack of cooperation" as required by the stipulation.

Because the record is replete with evidence that supports Finding VI of the trial court, we cannot hold the finding to be clearly erroneous as it relates to K.H.D. We must therefore uphold those portions dealing with K.H.D.

■ We now turn to B.H., who challenges Findings V and VII.[2] Upon a review of the record we are left with a firm and definite conviction that a mistake has been made and that these findings are clearly erroneous.

1. Finding of Fact VI provided:
   The mother of the above named children, [K.H.D.], has not assumed any active responsibility for said children and, in fact, visitations from [K.H.D.] have been detrimental to the well-being of said children.

2. Findings of Facts V and VII provide:

   V

   While assistance and advice have been provided to [B.H.] while the children have been in his custody through the Department of Social Services and the public school system, [B.H.] has been unable to provide guidance necessary for the well-being of the children and seems unable to communicate either guidance or affection to the children.

   .    .    .    .    .

   VII

   As the result of [B.H.'s] inability to provide adequate guidance for said children and the disruptive influence of [K.H.D.'s] visitation, all of the children are not developing well.

   (a) [R.H.] has been declared a delinquent child and is presently in a residential treatment program at McCrossan's Boy's Ranch.

   (b) [L.H.] has run away from her father, did not respond well to residential treatment at a residential treatment facility, Threshold, and is presently living in foster care, refusing to return to the care of her father.

   (c) [S.H.] ran away from home and has not returned. However, relationship between [S.H. and B.H.] is at best an uneasy one.

   (d) [F.H.] is failing in school and exhibits behavioral disorders.

The State contends these findings are supported by the record, in that R.H. committed a felony while in B.H.'s custody; L.H. ran away while in B.H.'s custody; F.H. has behavioral problems and unfulfilled emotional needs; the children are unsupervised; and that B.H. may have sexually molested the oldest girls, L.H. and S.H.

Our review of the evidence shows that B.H., though not a perfect father, is an adequate parent. He has cooperated with state authorities at every turn. All state authorities connected with this case have recommended that the children remain with B.H. It is conceded by B.H. that R.H. committed a felony while in his custody, but B.H. correctly points out that R.H. committed this act while visiting K.H.D. We do not feel that B.H.'s parental rights should be terminated due to acts that occurred while R.H. was under the control and supervision of K.H.D.; to do so would be to impute the parental deficiencies of K.H.D. to B.H., and this we refuse to do.

B.H. also admits that L.H. ran away while in his custody. This was, however, with the assistance and support of K.H.D. and M.H., the emancipated sister. Again we find no action on the part of B.H. that warrants termination of his parental rights. B.H. further admits that F.H. has certain behavioral disorders. Nevertheless, we find no acts by B.H. which have caused such problems. In any event, such disorders in and of themselves will not support termination of parental rights without some showing that the parents are the cause of such problems.

Therefore, this court is left with only one contention which would, if true, support a termination of B.H.'s parental rights; that being whether B.H. had sexually molested L.H. and S.H. Both L.H. and S.H. made allegations that B.H. had fondled their breasts; however, they admitted in the court's chambers that these allegations were groundless, stating that they were made in an attempt to secure their placement with K.H.D. B.H. submitted to a polygraph examination, which indicated that he had not fondled his daughters' breasts. All credible evidence indicates that B.H. did not sexually molest his daughters. We fail to see how this could be a foundation for termination of his parental rights.

What the evidence does clearly indicate is that B.H. has been an honest, resourceful, cooperating, and concerned parent. All social workers and state authorities connected with this case recommended that the children remain with B.H. He was portrayed as attempting to implement all suggestions made by such authorities in the rearing of these children. Although some social workers testified that B.H. lacked the ability and comprehension to institute some of their suggestions, we will not countenance a termination of B.H.'s parental rights merely due to his lack of intelligence and understanding of some suggestions which were made to him.

Thus, we hold that the findings of fact as they relate to B.H. are clearly erroneous. We find some solace in the fact that apparently the Department of Social Services also felt that B.H. was an adequate parent, for it chose to place the children in the care and custody of B.H. for a significant amount of time after his parental rights had been terminated. It seems odd that B.H.'s abilities as a parent can be so deficient that it requires termination of his parental rights, but that he is adequate enough to allow subsequent temporary placement of the children in his custody. Moreover, the evidence regarding B.H. clearly warrants a less restrictive alternative than the termination of his parental rights. *Matter of B. E.*, 287 N.W.2d 91 (S.D.1979); *Matter of N. J. W.*, 273 N.W.2d 134 (S.D.1978).

Accordingly, the decree of disposition terminating parental rights is affirmed as it relates to K.H.D.; and reversed as it relates to B.H.

All the Justices concur.