**Glenn C. WILLIAMS, Marjorie Williams, and Leroy Williams, Plaintiffs and Appellants,**

v.

**Virgil D. WILLIAMS, Wilma Williams, Harley Hoffman, Donald C. Perrion, and Carol G. Perrion, Defendants and Appellees.**

**No. 13929.**

Supreme Court of South Dakota.

Considered on Briefs May 25, 1983.

Decided May 2, 1984.

Carlyle E. Richards, P.C., Aberdeen, for plaintiffs and appellants.

Thomas A. Kolker of Maloney, Kolker, Fritz, Hogan & Johnson, Ipswich, for defendants and appellees Virgil D. Williams and Wilma Williams.

R.M. Schutz of Siegel, Barnett & Schutz, Aberdeen, for defendants and appellees Harley Hoffman, Donald C. Perrion and Carol G. Perrion.

MORGAN, Justice (on reassignment).

This action was commenced by the plaintiffs Glenn C. Williams, Marjorie Williams and Leroy Williams (lessees) to set aside a conveyance of real estate by Virgil D. Williams and Wilma Williams (lessors) to Harley Hoffman, Donald C. Perrion and Carol G. Perrion (purchasers) and to require conveyance of title to the real estate to the lessees. The trial court entered summary judgment for the lessors and lessees appeal. We reverse and remand.

SDCL 15-6-56(c) provides for the entry of summary judgment upon satisfaction of two conditions. First, the trial court must determine from all the pleadings, affidavits, depositions, etc. that there is no genuine issue of material fact. It must further determine from such records that the moving party is entitled to judg-

ment as a matter of law. In making these determinations, it views the facts in a light most favorable to the nonmoving party. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968).

On May 5, 1977, the parties entered into a written lease covering two quarter-sections of land in Edmunds County for a term that ran from March 1, 1977 to March 1, 1980. The dispute revolves around Article XIII of this lease which provided:

> The term of this Lease, and LESSEE'S rights hereunder are subject to the right reserved by the LESSOR to sell the FARM at any time within said term and if the FARM is sold between March 1 and November 1 in any year of the term of this Lease, LESSEE shall. have the full right, as specified in ARTICLE II hereof to harvest all crops within a reasonable time after November 1. (Provided, however, that, prior to consummating any such sale, LESSOR shall advise LESSEE in writing of any offer to purchase the FARM which LESSOR is willing to accept, and LESSEE shall have the option, within fifteen (15) days after the receipt of such notice, to meet said offer and forthwith purchase the FARM from LESSOR on all of the terms and conditions of said offer. If LESSEE does not give written notice of the exercise of said option within the time period aforesaid, LESSOR shall have no further obligation towards the LESSEE with respect to the sale of the FARM. If LESSEE does timely exercise its option, and presents evidence, sufficient to any bank or other reputable lending agency in Aberdeen, South Dakota, of its financial responsibility and capability to carry out the terms of said purchase, LESSOR shall be in all things bound by the same. Further, at the end of the term of this Lease, if LESSOR desires to sell the FARM, he shall give LESSEE a reasonable opportunity, to purchase the same on such terms and conditions as they may mutually agree upon.)

At or about the time the term of the lease expired, Glenn Williams and Virgil Williams discussed an extension of the lease. They orally agreed that the lease could be extended for a five dollar per acre increase in the cash rent. Lessors had their attorney prepare a written addendum for a three-year term at the increased rent which specifically provided that Article XIII of the lease would be renewed. The addendum, however, was never signed. Lessees remained in possession and at the end of February 1980 paid lessors one-half of the cash rent due for the 1980 crop year and in September paid the balance. The rent paid was computed with the five dollar per acre increase included.

On July 22, 1980, lessors listed the leased land for sale with an agent for H.H. Hoffman Realty at five hundred dollars per acre. The listing agreement was prepared by the real estate agent and presented to lessors. That agreement specifically noted that "Leroy Williams and Glenn Williams have right of 1st refusal." The lessors signed that agreement. The realtor discussed the prospective sale with lessees but they were not interested at that price. Without further contact with the lessees, lessors then entered into uniform purchase agreements on one quarter-section with defendants Perrion and on the other with defendant Hoffman of H.H. Hoffman Realty. Lessors and the other defendants agreed to a purchase price for both quarters of four hundred thirty-five dollars per acre.

On October 28, 1980, lessors sent lessees a notice stating that their "oral lease" would be terminated as of March 1, 1981. Counsel for lessees responded by notifying lessors in writing that:

> In accordance with the Lease dated May 5, 1977, by and between yourselves, Virgil D. Williams and Wilma Williams, as Lessors, and Glenn C. Williams and Marjorie Williams and LeRoy Williams, as Lessees, the Lessees, in accordance with Article XIII, entitled "Sale of Farm", herewith, in writing, accept the option granted therein.

In spite of this notice, lessors sold the land on November 3, 1980, as contemplated in the purchase agreements with Perrion and Hoffman.

Lessees commenced action against the lessors and their purchasers, complaining that the two quarter-sections had been sold in contravention of the lessees' right to purchase the same and prayed that the purchase agreements be cancelled and that title to the quarter sections be conveyed to lessees, who were ready and willing to purchase the same. Upon motions made by the respective lessors and purchasers, the trial court eventually granted summary judgment.

■ The sole question on this appeal is whether, as lessees contend, there is a genuine issue of material fact that must be resolved in order to determine the enforceability of an oral extension of the right of first refusal contained in Article XIII of the original lease. We agree with lessees.

The trial court held that the right of first refusal would be unenforceable under the provisions of the South Dakota statute of frauds, SDCL 53–8–2, which provides, in pertinent part:

> The following contracts shall not be enforceable by action unless the same or some memorandum thereof be in writing and subscribed by the party to be charged or his agent, thereunto authorized in writing:
>
> . . . .
>
> (3) An agreement for the sale of real estate or an interest therein or lease of the same for a period longer than one year, but this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof.

We have considered the record of this case in a light most favorable to the lessees as the nonmoving parties and do not agree. *Wilson, supra.* We have previously held that the writing referred to in SDCL 53–8–2 need not be entirely in one document. *Drake v. Sample,* 279 N.W.2d 685 (S.D. 1979); *Townsend v. Kennedy,* 6 S.D. 47, 60 N.W. 164 (1894). In *Drake, supra,* the majority of this court held that a letter coupled with another written memorandum was sufficient to meet the requirements of the statute of frauds; the court said: "In order to meet the requirements of our statute [of frauds], it is sufficient that the substance of a contract for the purchase of real property is inferred from the writing, even though the writings are made up of disjointed memoranda or protracted correspondence." 279 N.W.2d at 689. *See also, Staab v. Skoglund,* 89 S.D. 470, 234 N.W.2d 45 (1975). In the instant case, we have in the record an unsigned addendum, prepared at the lessors' direction, which extends the term of the lease and the right of first refusal contained in Article XIII of the lease. The right of first refusal is also confirmed by the listing agreements in which the lessors specifically included the lessees' right of first refusal, and which the lessors signed. We see the disjointed memoranda in this case as being no different than those of *Drake, supra.*

■ We further consider whether a holdover of the lease would renew Article XIII inasmuch as SDCL 43–32–14 provides in pertinent part that "the parties are presumed to have renewed the hiring on the same terms" and is silent as to any option provisions in a lease which might affect the title. There is authority that a purchase option, not being a term of tenancy, is a covenant separate and independent of any leasehold interests. *Libin v. Peters,* 118 Ind.App. 27, 75 N.E.2d 162 (1947); *Nevala v. McKay,* 178 Mont. 327, 583 P.2d 1065 (1978); *Napper v. Rice,* 127 W.Va. 157, 32 S.E.2d 41 (1944); Annot., 15 A.L.R.3d 470, § 7[b] (1967).

These authorities are not persuasive in this case because Article XIII is not an option to purchase. Options to purchase typically permit lessees to purchase the property at a specified price entirely at their option. Rather, Article XIII granted lessors the right to sell the property during the term of the lease and in such event required lessees to harvest all crops within a reasonable time after November 1 of the year of sale. Article XIII thus created the possibility that the term of the lease might be shortened. The provisions giving lessees only the right of first refusal to meet

the proposed sale price was a parenthetically expressed limitation on the right of the lessors to sell. Article XIII is therefore a variation on the terms of the tenancy and an integral part of the lease.

Inasmuch as lessors dispute some of the foregoing statement of facts, we determine that there exist genuine issues of material fact with respect to whether and to what extent the 1977 written lease was extended by the parties. This question is to be decided by the trial court on remand.

The summary judgment is reversed and the case is remanded to the circuit court for trial.

WOLLMAN, DUNN and HENDERSON, JJ., concur.

FOSHEIM, C.J., dissents.

FOSHEIM, Chief Justice (dissenting).

The majority concludes the unsigned lease addendum and the listing agreements between lessor and the real estate agent are sufficient to satisfy the statute of frauds. I disagree. Because it is, by nature, an agreement to sell real estate, a right of first refusal provision does not extend beyond the original lease term unless evidenced by a writing capable of satisfying the statute of frauds. *See* SDCL 53–8–2; *Skjoldal v. Myren,* 86 S.D. 111, 191 N.W.2d 809 (1971) (oral agreement to extend written option to purchase real estate held unenforceable under statute of frauds unless significant part performance occurs).

The listing agreements do not help the lessees. They were not in privity to those agreements and thus had no power to enforce any representations of the lessor as to their right of first refusal. The unsigned lease addendum is similarly ineffectual. Unlike our decisions which have permitted subsequent written and signed memoranda to be consolidated into the original contract, *Drake v. Sample,* 279 N.W.2d 685 (S.D.1979); *Townsend v. Kennedy,* 6 S.D. 47, 60 N.W. 164 (1894), this unsigned addendum was agreed to orally at or about the time of lease expiration. It altered the terms of the original lease and, in effect, created a new lease. It purported to extend the lease three years. This was clearly unenforceable under SDCL 53–8–2(3) which requires that an agreement for lease of real estate for a period longer than one year be in writing and signed by the party to be obligated. No valid lease renewal was achieved and the lessees must therefore be deemed to have held over.

The right of first refusal provision did not survive into the holdover period. The majority recognizes that our holdover statute, SDCL 43–32–14, focuses on the terms of hiring, i.e., of temporary possession, and is silent as to any option provision which might affect title. It also cites persuasive authority that a purchase option is not a term of tenancy, but is separate and independent from any leasehold interest. A purchase option therefore does not extend into a holdover period.

The majority goes astray in concluding that a right of first refusal is not a purchase option. A right of first refusal is admittedly a conditional purchase option which must await the appearance of a third-party purchaser and a willing lessor-vendor, but, be it conditional or absolute, it is nevertheless a purchase option. Annot., 15 A.L.R.3d 470, § 4[b] (1967); Annot., 34 A.L.R.2d 1158 (1954). As such, the right of first refusal provision was neither explicitly nor implicitly extended into the holdover period by SDCL 43–32–14.

I would affirm the summary judgment.